Filed 4/11/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re Damian L. et al., Persons Coming Under the Juvenile Court Law. | |
| MADERA COUNTY DEPARTMENT OF SOCIAL SERVICES/CHILD WELFARE SERVICES,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>L.V. et al.,<br><br>Defendants and Respondents. | F083805<br><br>(Madera Super. Ct. Nos. MJP018386 & MJP018387)<br><br>**OPINION** |

APPEAL from orders of the Superior Court of Madera County. Thomas L. Bender, Judge.

Regina A. Garza, County Counsel, and Doreen Houx, Deputy County Counsel, for Plaintiff and Appellant.

Katie Curtis, under appointment by the Court of Appeal, for Defendant and Respondent L.V.

No appearance for Defendant and Respondent David L.

No appearance for of Defendant and Respondent Julio A.

-ooOoo-

Appellant Madera County Department of Social Services (department) appeals from the juvenile court's orders issued at a combined hearing for family reunification review and disposition from a Welfare and Institutions Code section 387[1] petition on November 15, 2021. The department contends the juvenile court erred when it ordered the department to provide additional reunification services to L.V. (mother) for her dependent children Damian L. and Jesse A. (collectively "the children"). We conclude the juvenile court erred in ordering additional reunification services.

## PROCEDURAL AND FACTUAL SUMMARY

On September 14, 2019, eight-year-old Damian L. and five-year-old Jesse A. were taken into protective custody by law enforcement due to concerns of neglect by mother. Damian L. was located by a police officer after being reported as missing by his adult sister on the previous evening. Mother's home was found to be dirty with broken glass and doors, and a social worker indicated the mother's home was a known drug and gang home. The social worker placed the children in foster care with their maternal grandmother. Four of the children's siblings were allowed to remain with the maternal grandmother after a "Team Decision Making" meeting was held on September 17, 2019. The siblings had been living with the maternal grandmother for most of their lives.

The department filed an original petition alleging the children were described under section 300, subdivision (b). The petition alleged the children were at substantial risk of suffering serious physical harm as a result of hazardous conditions in mother's home and mother's failure to provide adequate supervision. The petition further alleged that Damian L. was reported missing 24 hours after his whereabouts became unknown, and mother was unaware that Damian L. was missing.

On September 18, 2019, the juvenile court continued the hearing to the following date after conflicts required the appointment of new counsel for multiple parties. At the continued hearing on September 19, 2019, the juvenile court ordered the children

---

[1] All further statutory references are to the Welfare and Institutions Code.

detained and set a jurisdictional hearing for October 17, 2019. The juvenile court found there were no reasonable means by which the children's physical or emotional health may be protected without removing the children from the physical custody of their parent and the initial removal of the children from their home was necessary. Services were to be provided to the family as soon as possible to reunify the children with their family.

The agency's jurisdiction report, filed on October 16, 2019, recommended that the allegations in the original petition be found true and a disposition hearing be set within a statutory timeframe. Mother tested positive for amphetamine and methamphetamine on October 3, 2019, according to a hair follicle drug test that was attached to the report. Jesse A.'s presumed father, Julio, also tested positive for amphetamine and methamphetamine. The initial jurisdiction hearing was continued to October 31, 2019, for mother's counsel to "discuss the new information in the report with mother." At the continued jurisdiction hearing, the matter was continued further for a contested jurisdiction hearing to be held on November 21, 2019.

On November 20, 2019, the department filed an addendum report requesting the juvenile court receive three police reports into evidence. The reports documented two occasions that Damian L. ran away from the maternal grandmother's home on September 19, 2019, and September 20, 2019. The reports also detailed an incident where Damian L. ran away from a department conference room. After officers located Damian L., he made several statements that he intended to kill himself. Officers placed a section 5150 hold on Damian L. due to his statements about harming himself.

On November 21, 2019, mother's counsel requested a continuance of the contested hearing due to her receipt of the report on the previous day. The juvenile court found good cause to grant the continuance and reset the contested jurisdiction hearing to January 9, 2020. The juvenile court's minute order reflects no finding of exceptional circumstances requiring a continuance that would result in the disposition hearing being completed more than 60 days from the children's removal. Mother was not present for

3.

the continued hearing, and the matter was continued to February 13, 2020, while mother was incarcerated at the Madera County Department of Corrections.

The contested jurisdiction hearing proceeded on February 13, 2020, with mother both present and incarcerated. All parties submitted with an agreement to dismiss an allegation regarding the condition of mother's home at the time of the children's removal. The juvenile court found the remaining allegation in the petition true and set a disposition hearing for February 27, 2020. In setting the disposition hearing beyond the statutory time limit, the juvenile court found exceptional circumstances existed "due to the length of time it took for the jurisdiction hearing." The children were ordered to remain in the department's temporary care and custody pending the disposition hearing or further order of the court.

On February 26, 2020, the department filed a motion for a three-week continuance because it needed additional time to assess a father for placement and develop an appropriate recommendation. The juvenile court continued the disposition hearing to March 23, 2020, which was more than six months after the detention hearing. Neither the minute order nor the department's motion provide a reason for the department's inability to have its assessments for disposition completed in a timely manner.

At the continued disposition hearing, the juvenile court granted another request for continuance because the department was "still assessing bypass on [Damian L.'s] father." The juvenile court found "good cause" to grant the continuance, but its findings do not address any exceptional circumstances justifying delays beyond six months from the children's removal. The disposition hearing was continued to April 2, 2020, and the juvenile court ordered mother's counsel to follow up with the department's counsel regarding the placement of Jesse A. with an adult sibling.

The department's disposition report, filed on March 30, 2020, recommended the children remain placed in foster care with family reunification services provided to mother and Damian L.'s father. The department recommended that no family reunification services be provided to Julio A. pursuant to section 361.5,

4.

subdivision (b)(13). The whereabouts of Damian L.'s father was unknown, and a due diligence report was filed. The report included details of Julio A.'s current dependency proceedings involving Jesse A.'s siblings. The department was recommending that Julio A.'s family reunification services be terminated for a pending 12-month review hearing.

Mother was released from custody on March 17, 2020, related to her arrest for ammunition and drug possession. She was also facing kidnapping and other felony charges in a pending criminal case in Fresno County. Mother admitted to using methamphetamine three times after her children were removed, and she reported consuming alcohol daily to help her sleep. She acknowledged that she had an alcohol problem and requested to be referred to parenting classes, mental health services, and an inpatient substance abuse treatment program where she can have her children with her. Mother was expecting another child and living at a homeless shelter.

Damian L. was being evaluated for a heart condition and began mental health treatment. The children were developing at an age-appropriate level and meeting developmental timelines, and there were no concerns for the children's education. The social worker believed both children appeared mentally and emotionally stable. Mother had weekly visits with the children for two hours, and the visits were going well.

The children were placed in separate resource family homes. Damian L. was moved to a resource family home due to his "risky behaviors" of running away from the maternal grandmother's home. Jesse A. remained in the maternal grandmother's home until her health became compromised, and he was moved to the home of his adult sibling on March 19, 2020. Jesse A. spent one day in the home of his adult sibling until the department became aware of "history" involving the adult sibling and her husband that would place Jesse A. at risk of abuse or neglect.

At the continued disposition hearing held on April 2, 2020, mother made a request to contest the department's recommendation. The juvenile court set the matter for a contested disposition hearing on April 27, 2020. The department filed an addendum

report on April 24, 2020, which provided updated information on mother's circumstances. Mother was participating in weekly parenting classes after being dropped from the program that she began in October 2019 for lack of attendance. A hair-screening test collected March 25, 2020, indicated positive results of methamphetamine for mother. Mother eventually admitted to "being under a lot of stress" when informed that the test could trace use in the previous three months.

The contested disposition hearing began on April 27, 2020, with testimony from mother. On May 4, 2020, the contested disposition hearing continued with additional testimony from mother. The juvenile court continued the contested hearing for a ruling on May 18, 2020. The department filed an addendum report with additional information on the termination of Jesse A.'s father's reunification services as to his other children on May 7, 2020.

On May 18, 2020, the department requested to reopen evidence to allow the juvenile court to admit the addendum report and take judicial notice of mother's recent misdemeanor conviction. Jesse A.'s father was not present and had no contact with his counsel, but his counsel requested a continuance to review the report. The juvenile court admitted the addendum report into evidence and took judicial notice of mother's misdemeanor conviction. The hearing was continued to June 4, 2020, as a result of the new evidence being admitted based solely on a finding of good cause.

The juvenile court provided its ruling on the contested disposition on June 4, 2020. Mother was present and neither of the children's fathers were present. The juvenile court did not find mother posed a substantial danger to the children, and it found there were reasonable means to protect the children. Family maintenance services were ordered for mother, and no services were provided to the children's fathers. A family maintenance review hearing was set for December 1, 2020.

**Family Maintenance Period**

On October 1, 2020, the juvenile court denied mother's request for approval to move to the state of Iowa because the request was not made properly. The department

filed a motion to continue the family maintenance review hearing on November 30, 2020. The motion was based upon the department's need to wait for "more supportive information to make the recommendation on behalf of the children." On December 1, 2020, the juvenile court continued the review hearing to December 17, 2020, due to the lack of a report.

The department's report for the section 364 review hearing, filed on December 16, 2020, recommended that family maintenance services continue for mother. The children and mother were living in an apartment, and mother planned to seek employment as an agricultural field worker for seasonal employment. Mother completed her parenting program on July 6, 2020, and participated in counseling with a therapist over the phone since May 2020. The terms of mother's probation required her to complete mental health and alcohol counseling. Mother tested negative for all substances during three urine tests in June and July of 2020. Her family maintenance case plan required her to comply with her probation conditions, cooperate with requests to drug test and complete any recommended substance abuse programs. She hoped to move to Iowa after the dependency proceedings were closed.

The department attempted to have mother complete a hair test in order to dismiss the case, but mother failed to comply with multiple requests to test. The results of mother's hair test were received by the department on December 16, 2020, and they yielded positive results for methamphetamine. At the continued section 364 review hearing, mother's counsel requested a continuance, and the juvenile court continued the matter to February 8, 2021. On January 19, 2021, the juvenile court ordered the children to undergo hair follicle drug tests at the department's request. The department made the request after mother refused to take the children for hair drug testing to rule out any exposure to methamphetamine. Both children's hair samples tested positive for methamphetamine according to the results received by the department on January 26, 2021.

*Supplemental Petitions*

On January 27, 2021, the children and their infant sibling were taken into custody by a department social worker pursuant to a juvenile court order for detention. The children were placed together in the home of their maternal grandmother. At a child and family team meeting, the department identified next steps for mother as more classes in recovery with a sponsor and substance abuse disorder treatment. Mother intended to start treatment on January 28, 2021.

The department filed a supplemental petition alleging the previous disposition of family maintenances services was not effective in the protection of the children due to their exposure to methamphetamine. At a continued detention hearing held on February 8, 2021, the juvenile court ordered the children detained from mother's custody, and it set a jurisdiction hearing for March 1, 2021. Mother informed the juvenile court that she was in services, and the juvenile court authorized visits to occur at the maternal grandmother's home.

The initial jurisdiction hearing on the section 387 petition was continued twice at mother's request. On April 23, 2021, the juvenile court sustained the supplemental petition and ordered that services be provided to reunify the children with mother. The services to be provided included parenting classes, substance abuse treatment, random drug testing, and mental health treatment. A disposition hearing was set for May 6, 2021. The juvenile court granted the department's motion to continue the hearing to provide it with additional time to "conduct a thorough assessment of the family's needs to ensure appropriate services are provided."

At the continued disposition hearing held on May 10, 2021, all parties submitted the matter on the department's disposition report. The juvenile court adopted the department's recommendation to order family reunification services to mother and the children's fathers. Mother participated in supervised visits with the children twice per week for two hours without any noted concerns. The children remained placed in a relative placement with the maternal grandmother. The department initiated referrals for

mother to complete mental health and substance abuse assessments, parenting classes, and random drug testing in accordance with her reunification case plan. A hearing was set for September 13, 2021, as a 24-month permanency hearing pursuant to section 366.25.

The department filed a second section 387 petition to remove the children from the home of their maternal grandmother on July 16, 2021. The petition alleged the maternal grandmother allowed the children to regularly spend the night at a home that was unsafe and condemned. The home contained a marijuana grow that was accessible to the children, and a hair test of the children returned positive results for methamphetamine and marijuana. The children were placed together in a nonrelative resource family home. After two continuances of the detention hearing, the juvenile court ordered the children to be detained and set a jurisdiction hearing for August 16, 2021.

At a continued jurisdiction hearing, all parties submitted on the department's reports, and the juvenile court sustained the supplemental petition. The department's report prepared for the disposition hearing to be held on September 9, 2021, recommended continued family reunification services for mother and the children's fathers until September 13, 2021. The children remained placed together with their infant sibling in a resource family home. Mother recently began living at a "Rescue the Children" program, but a hair drug test of mother from August 19, 2021, provided a positive result for methamphetamine. The children's maternal aunt was considering placement of the children, but her husband was not supportive of that option.

Mother requested a contested disposition hearing on the section 387 petition, which was set for October 1, 2021, in combination with a contested family reunification review hearing. In the department's status review report, filed September 27, 2021, it recommended that family reunification services be terminated for mother and the children's fathers and a section 366.26 hearing be set. The report indicated the review hearing was a 24-month permanency review pursuant to section 366.25. Mother tested positive for methamphetamine on August 19, 2021, and she acknowledged relapsing

9.

prior to entering the Rescue the Children program on August 9, 2021.  She intended to start counseling at an 18-month program with Rescue the Children.  The program consisted of a 12-month residential program and six months of after care.

On October 1, 2021, mother was present for the contested section 387 disposition and 24-month review hearing.  Mother's counsel stated her intent to ask that the children be placed with mother at the program on that date.  Counsel for the children then informed the juvenile court of their belief that the "18-month clock" did not begin until the children were removed from mother's home pursuant to the section 387 petition on January 27, 2021.  It was then argued that a six-month review hearing should have been set at the May 10, 2021, disposition hearing on the section 387 petition.  The department's counsel responded that the 24-month review date is calculated from the date that the children were initially placed into protective custody despite the initial disposition of family maintenance services for mother.  The juvenile court took a recess to allow the parties to research the issue.

The parties resumed the discussion in the afternoon, and counsel for the department acknowledged a split in case law concerning the maximum time period for court-ordered services when a child is not placed in the home of their parent.  The juvenile court had reviewed the cases of *In re N.M.* (2003) 108 Cal.App.4th 845, 854 (*N.M.*) and *In re T.W.* (2013) 214 Cal.App.4th 1154 (*T.W.*), and the parties were asked to brief the issue to determine if it could order continued reunification services for mother as to the children.  Counsel for the children stated its position that a six-month review hearing should be set for November because the timeline of reunification "is not running" when children are placed with a parent at disposition.  Mother's counsel joined in the argument of the children's counsel.

The juvenile court ultimately continued the hearing to allow the parties to brief the issue in order to determine if mother was capable of receiving additional family reunification services.  However, the juvenile court gave a tentative ruling that it would

10.

follow *T.W.* and set a six-month review hearing in November. The department was also authorized to allow mother to participate in overnight visits with the children.

After a brief continuance to allow the parties to review and respond to the department's brief that was filed on October 14, 2021, the counsel for the children filed a responsive brief on October 29, 2021. On November 4, 2021, the juvenile court continued the combined hearing again because it needed more time to review the parties' briefs. The section 387 disposition and family reunification review hearing finally proceeded on November 15, 2021. The juvenile court initially expressed its inclination to follow *T.W.* and order continued family reunification services to mother with a 12-month review hearing in March 2022.

Counsel for the department argued that the decision in *T.W.* and *In re A.C.* (2008) 169 Cal.App.4th 636 (*A.C.*) incorrectly interpreted the statutory timelines and were limited to dispositions involving section 361.2. The department's counsel concluded that the statutory timelines do not change based upon whether a parent is granted family maintenance or family reunification services at disposition. In response, the juvenile court stated, "Well, yeah. I think there's a conflict there for sure. [¶] I think, probably, someone should appeal, and get a clear ruling from the appellate court on it myself." Counsel for the children and mother submitted on the juvenile court's tentative ruling. The juvenile court ordered the department to provide reunification services to mother and Damian L.'s father while the children remained in out-of-home placement, and it set a 12-month review hearing for March 28, 2022.

## DISCUSSION

The department contends the juvenile court erred when it ordered continuation of mother's reunification services for more than 24 months after the children were initially taken into protective custody in September 2019. Respondent, mother, contends the appeal should be dismissed as both moot and nonjusticiable. She further argues that the juvenile court did not err by ordering additional reunification services because she was

entitled to 12 months of reunification services after the children's removal at the May 2021 section 387 disposition hearing.

## I. Respondent's Motion to Dismiss

"A court is tasked with the duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' [Citation.] A case becomes moot when events ' "render[] it impossible for [a] court, if it should decide the case in favor of [the appellant], to grant him any effect[ive] relief." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 276.) " 'On a case-by-case basis, the reviewing court decides whether subsequent events in a dependency case have rendered the appeal moot and whether its decision would affect the outcome of the case in a subsequent proceeding.' " (*In re M.C.* (2011) 199 Cal.App.4th 784, 802.) Courts also have discretion to resolve appeals that are technically moot if they present important questions affecting the public interest that are capable of repetition yet evade review. (*In re A.M.* (2013) 217 Cal.App.4th 1067, 1078–1079.)

"While appellate courts rarely consider postjudgment evidence or evidence developed after the ruling challenged on appeal, such evidence is admissible for the limited purpose of determining whether the subsequent development has rendered an appeal partially or entirely moot." (*In re M.F.* (2022) 74 Cal.App.5th 86, 110 [taking judicial notice of minute orders from hearings that occurred after the challenged order]; see also *In re Salvador M.* (2005) 133 Cal.App.4th 1415, 1422 [augmenting the record to show the issue on appeal was rendered moot by subsequent events in the juvenile court].) Mother's September 15, 2022 request to augment the record on appeal with the juvenile court's August 18, 2022 order returning the children to her custody is hereby granted.

According to the juvenile court's calculation, the 24-month statutory limitation on court-ordered services would have expired in January 2023. The juvenile court is no longer capable of ordering reunification services in the present case given its subsequent

termination of jurisdiction.[2]  To provide guidance and avoid improper extension of reunification services by the trial court in any future proceedings, we reach the merits. After making its determination, the juvenile court acknowledged, "I think there's a conflict there for sure.  [¶]  I think, probably, someone should appeal, and get a clear ruling from the appellate court on it myself."

We acknowledge that the department's notice of appeal was filed on January 14, 2022, and it is likely that review of any ruling of the juvenile court continuing reunification services would be mooted by this extended period of time.  This fact is evident in the termination of the juvenile court's jurisdiction of the children prior to the completion of this appeal.  The issues raised in this appeal are of continuing public importance because they challenge the juvenile court's erroneous calculation of the statutory timeframes, which risks children remaining in temporary foster care placements for a longer period than necessary.  (See *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548 [refusing to address errors on appeal by declaring the case moot has the undesirable result of insulating erroneous rulings from review].)

Accordingly, we will reach the merits of this important issue of statutory interpretation despite subsequent events.  (*In re D.P.*, *supra*, 14 Cal.5th at p. 273 [Appellate courts retain inherent discretion to review merits of appeal despite termination of juvenile court's jurisdiction].)  The calculation of the statutory timeframe is an issue that is capable of repetition by the juvenile court and would otherwise evade review. (See *In re J.E.* (2016) 3 Cal.App.5th 557, 563, fn. 3 [Review of merits on extension of services to 24-month review hearing even though reunification services could no longer be extended].)  Furthermore, the juvenile court might provide reunification services in subsequent proceedings involving the children until the appropriate statutory limits in

---

[2] On this court's own motion, we take judicial notice of the juvenile court's February 7, 2023 order terminating jurisdiction with sole legal and physical custody of the children to mother.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

such cases have been clarified.  Thus, we deny mother's September 15, 2022 motion to dismiss the appeal.

## II.    Legal Principles

When the juvenile court removes a child from parental custody and adjudges the child a dependent, the court must ordinarily order family reunification services for the parent and child.  (§ 361.5, subd. (a).)  For a child under the age of three when first removed, reunification services are presumptively limited to six months.  (§ 361.5, subd. (a)(1)(B).)  The statute provides that for a child in that age class, the juvenile court shall provide reunification services "for a period of 6 months from the dispositional hearing as provided in subdivision (e) of Section 366.21, but no longer than 12 months from the date the child entered foster care, as provided in Section 361.49 .…"  (§ 361.5, subd. (a)(1)(B).)

A child is deemed to have entered foster care on the earlier of the date of the jurisdictional hearing or 60 days after the date on which the child was initially removed from parental custody.  (§ 361.49.)  Furthermore, the juvenile court must conduct a six-month status review hearing "6 months after the initial dispositional hearing, but no later than 12 months after the date the child entered foster care as determined in Section 361.49, whichever occurs earlier .…"  (§ 366.21, subd. (e)(1).)  The same 12-month date generally governs the 12-month review hearing, which under the statute "shall be held no later than 12 months after the date the child entered foster care .…"  (§ 366.21, subd. (f)(1).)

Section 361.5, subdivision (a)(1)(A), sets the standard for older children:  "[F]or a child who, on the date of initial removal from the physical custody of the child's parent or guardian, was three years of age or older, court-ordered services shall be provided beginning with the dispositional hearing and ending 12 months after the date the child entered foster care as provided in Section 361.49, unless the child is returned to the home of the parent or guardian."

Notwithstanding the 12-month presumptive limitation on reunification services, the juvenile court has the authority to extend services up to a period of 18 months after the child's initial removal from parental custody if it is shown at the 12-month review hearing " 'that the child will be returned and safely maintained in the home within the extended time period.' " (*M.F.*, *supra*, 74 Cal.App.5th at pp. 101–102.)

"Eighteen months is therefore generally considered the outer statutory time limit for reunification services. [Citations.] Indeed, the statutory scheme requires the permanency review hearing (when services have been extended beyond the 12-month review hearing) to occur 'within 18 months after the date the child was originally removed from the physical custody' of the parent. [Citation.] In other words, if the court does not return the child at the 12-month review hearing and finds there is no substantial probability of return to the parent within 18 months of the initial removal from parental custody, 'the court must terminate reunification efforts and set the matter for a hearing pursuant to section 366.26 for the selection and implementation of a permanent plan. [Citation.]' " (*M.F.*, *supra*, 74 Cal.App.5th at p. 102.)

The review hearing statutes presume that the hearings are conducted in a timely manner. When they are not, "reunification services and timing of review hearings are to be determined relative to the child's initial removal into custody or the jurisdictional or dispositional hearing, not the length of previous services or the dates of previous review hearings." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 846 (*Tonya M.*).) Consequently, the juvenile court is required to reevaluate the propriety of future services under the new applicable standard for that hearing and lacks the authority to order services extending beyond the next review hearing. (*Id.* at p. 845.)

"Notably, the authority to continue a hearing pursuant to section 352 beyond the time limit 'within which the hearing is otherwise required to be held' (§ 352, subd. (a)(1)) does not authorize the court to ignore or redefine statutory time limits. Nor does it allow the court to grant a continuance that would cause the disposition hearing to be held more

than six months after detention. (*Id.*, subd. (b); see also Cal. Rules of Court, rule 5.550(a)(3).)" (*In re M.F., supra*, 74 Cal.App.5th at pp. 102–103, fn. omitted.)

## III. Standard of Review

We ordinarily review fact-bound issues such as removing a child from parental custody or, here, continuation of reunification services, "for substantial evidence viewing the record in the light most favorable to the juvenile court's findings." (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 344.) "When the issue on appeal involves the interpretation and proper application of the dependency statutes, however, our review is de novo." (*Ibid*.)

" 'Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.]' [Citation.] We construe the statute's words in context, and harmonize statutory provisions to avoid absurd results." (*John v. Superior Court* (2016) 63 Cal.4th 91, 95–96.)

## IV. Analysis

The department contends the juvenile court erred as a matter of law by relying upon the case of *T.W.* and ordering continued reunification services for mother beyond 24 months from the date the children were originally removed from mother's physical custody. The department argues that the children's subsequent return to mother's custody at the disposition hearing did not toll the maximum time period for reunification services.[3] Mother responds that the juvenile court acted appropriately because she was entitled 12 months of reunification services from the date of the disposition hearing where the children were removed from all parental custody. We agree with the department.

---

[3] We grant the department's request for judicial notice filed on August 1, 2022, for the consideration of Assembly Bill No. 706 (2009–2010 Reg. Sess.) and Assembly Committee on Human Services, Analysis of Assembly Bill No. 2341 (2007–2008 Reg. Sess.), as amended March 28, 2008.

16.

Whenever a child is removed from the custody of their parent or guardian, the juvenile court "shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians." (§ 361.5, subd. (a).) A child's detention pending a jurisdictional hearing is considered a removal from parental custody for purposes of section 361.5, subdivision (a). (*N.M.*, *supra*, 108 Cal.App.4th at p. 854; see also § 319, subd. (g) ["If a court orders a child detained, the court shall state the facts on which the decision is based, specify why the *initial removal* was necessary … and order services to be provided as soon as possible to reunify the child and their family, if appropriate." (Italics added.)]; § 352, subd. (b) ["… if a minor has been *removed* from the parents' or guardians' custody, a continuance shall not be granted that would result in the dispositional hearing, held pursuant to Section 361, being completed longer than 60 days, or 30 days in the case of an Indian child, after the hearing at which the minor was *ordered removed or detained*, unless the court finds that there are exceptional circumstances requiring a continuance." (Italics added.)].) Thus, a child's initial or original removal occurs at the time a child's removal is ordered at a detention hearing.

"It is difficult, if not impossible, to exaggerate the importance of reunification in the dependency system." (*In re Luke L.* (1996) 44 Cal.App.4th 670, 678.) Pursuant to section 319, subdivision (g), "services" must be provided, if appropriate, upon the child's initial removal at the detention hearing. Section 361.5, subdivision (a) "ordinarily" requires that "child welfare services" be provided to a child and their parents whenever a child is removed from the home of their parent or guardian. (*Tonya M.*, *supra,* 42 Cal.4th at p. 843.) The term "child welfare services" is defined in section 16501, subdivision (a): "Child welfare services" include "a continuum of services, including emergency response services, family preservation services, family maintenance services, family reunification services, and permanent placement services."

The term "child welfare services" does not necessarily imply reunification services. *(In re A.L.* (2010) 188 Cal.App.4th 138, 144.) Instead, both reunification

services and family maintenance services are a subset of the term "child welfare services." (§ 16501, subd. (a)(2).)  "[F]amily maintenance services are activities designed to provide in-home protective services to prevent or remedy neglect, abuse, or exploitation, for the purposes of preventing separation of children from their families." (§ 16501, subd. (g).)  "[F]amily reunification services are activities designed to provide time-limited foster care services to prevent or remedy neglect, abuse, or exploitation, when the child cannot safely remain at home, and needs temporary foster care, while services are provided to reunite the family."  (*Id.*, subd. (h).)

"The Legislature has recognized that a parent who has a child removed for neglect, abuse or substantial risk thereof, in most cases should be provided with services to assist the parent in overcoming the problems that led to removal.  (§ 361.5.)  It has also recognized that, in order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate."  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.)  Reunification services are a benefit, and there is no constitutional "entitlement" to child welfare services.  (*In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1242, citing *In re Joshua M.* (1998) 66 Cal.App.4th 458, 476.)  Furthermore, the resources available to the juvenile court are not unlimited.  (*In re Alanna A.* (2005) 135 Cal.App.4th 555, 566.)

Accordingly, while the statutory scheme generally requires that parents be provided "court-ordered services" beginning with the disposition hearing and ending 12 months after the date the child entered foster care, the Legislature has limited those services to "a maximum time period not to exceed 18 months," which may be extended to 24 months under certain circumstances.  (§ 361.5, subd. (a).)  The 18-month and 24-month periods are calculated from the date the child was originally removed from physical custody of the child's parent.  (§ 361.5, subd. (a)(3)(A) and (a)(4)(A).)  However, "the reunification period may be as short as six months, and in some dependency cases there may be no reunification period at all.  (See §§ 366.21, subd. (e), 361.5, subd. (b); *In re Troy Z.* (1992) 3 Cal.4th 1170, 1177 ….)"  (*In re Zacharia D.*

18.

(1993) 6 Cal.4th 435, 446; see also *In re Aryanna C.*, *supra*, 132 Cal.App.4th at p. 1242 [father's abysmal efforts at reunification supported court's decision to terminate services before expiration of six-month period].)

Mother's contention that the juvenile court was permitted to order additional reunification services because she was entitled to 12 months of reunification services ignores the outer limits that the Legislature has placed on court-ordered services when a child will remain in out-of-home care at the time services are ordered or continued. Eighteen months is generally considered the outer statutory time limit for reunification services. (*In re M.F.*, *supra*, 74 Cal.App.5th at p. 102; see also *Tonya M.*, *supra*, 42 Cal.4th at p. 845 [describing "three distinct periods and three corresponding distinct escalating standards for the provision of reunification services to parents of children under the age of three" running "roughly" from the jurisdictional hearing to the six-month review, from the six-month review hearing to the 12-month review hearing, and from the 12-month review hearing to the 18-month review hearing].) "In addition, section 361.5, subdivision (a)(4)(A), and section 366.22, subdivision (b), permit a further extension up to a maximum of 24 months at the 18-month review hearing under certain narrowly defined circumstances." (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1124, fn. omitted.)

"To be sure, the dependency scheme contemplates disposition occurring close in time to the designation of foster care entry, thus typically allowing the parent to receive 12 months of reunification services prior to arriving at the statutory outer bound of 'no longer than 12 months from the date the child entered foster care.' (§ 361.5, subd. (a)(1)(B).) But when circumstances do result in delays, California courts regularly enforce the statutory limits." (*In re M.F.*, *supra*, 74 Cal.App.5th at p. 104.)[4] To adopt

---

[4] We can appreciate that extraordinary circumstances resulting in the delay of the disposition hearing beyond the 18-month time limit may require a departure from the statutory time period to ensure that a parent's ability to receive any reunification services is not completely undermined. However, a strict adherence to the outer 18-month limit

the reasoning suggested by mother would place the 18-month limitation prescribed by section 361.5, subdivision (a)(3)(A) in subjection to the general provision of court-ordered services until 12 months after the child enters foster care in section 361.5, subdivision (a)(1)(A). This type of reading of section 361.5 fails to properly consider the context of those provisions and how the statute is written as a whole.

Establishing a mandatory minimum of 12-month reunification services from the date of a disposition hearing where the child is removed from the custody of all parents would require one to ignore the plain language of the rest of the statute. Section 361.5, subdivision (a)(3)(A) begins, "Notwithstanding subparagraphs (A), (B), and (C) of paragraph (1), court-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody of the child's parent …." Thus, the usual requirement of 12 months of court-ordered services in subparagraph (A) of paragraph (1) is still constrained by the 18-month outer limit. (See *People v. Sanders* (2012) 55 Cal.4th 731, 739 [rejecting defendant's argument, that the general provisions of § 12021, subd. (a)(1) necessarily trumped § 12021.1, subd. (a) to the extent the statutes overlapped in a particular case, because "[t]he Legislature's use of the word 'notwithstanding' in this context meant that section 12021.1(a) applied without prevention or obstruction by section 12021(a)(1)"].) "[Mother]'s contrary interpretation of the statute renders the Legislature's use of the word 'notwithstanding' meaningless, and violates the principle that when interpreting a statute, significance should be given to every word, phrase, and sentence where possible. (See *People v. Black* (1982) 32 Cal.3d 1, 5 ….)" (*People v. Sanders*, *supra*, 55 Cal.4th at p. 739.)

Although it considered a different issue, we find the discussion in *Tonya M.*, *supra*, 42 Cal.4th at p. 836, helpful in our analysis. The combined jurisdiction and disposition hearing for the child in *Tonya M.* took place approximately nine months

---

was important in the present case given the multiple continuances of the disposition hearing without adequate findings to support their necessity.

before the six-month review hearing because of multiple continuances. (*Id*. at p. 841.) At the six-month review hearing in August 2006, the court ordered termination of the mother's reunification services and set the matter for a section 366.26 permanency planning hearing in December 2006, after determining there was no substantial probability the child would be returned to the mother by November 2006, when the court would be required to hold the section 366.21, subdivision (f) hearing or the 12-month review date. (*Tonya M.*, at p. 842.) Mother appealed, arguing the juvenile court erred, since it should have considered whether there was a substantial probability the child would be returned to the mother by February 2007, a full six months after the six-month review hearing. (*Ibid*.)

The Supreme Court concluded the juvenile court calculated the correct time period when deciding whether reunification services should be continued. The court reviewed the specific statutory language and broader statutory context and concluded that "[d]elays in the timing of one hearing should not affect either the timing of subsequent hearings or the length of services to be ordered." (*Tonya M.*, *supra*, 42 Cal.4th at p. 846.) In doing so it held that "[t]his approach is consistent with the Legislature's directive that periods for reunification services and timing of review hearings are to be determined relative to the child's initial removal into custody or the jurisdictional or dispositional hearing, not the length of previous services or the dates of previous review hearings." (*Ibid*.) Thus, the Supreme Court reinforced the outer time limits for review hearings despite delays that threatened to encroach on a parent's standard reunification timeline. (See *In re M.F.*, *supra*, 74 Cal.App.5th at p. 105.) Mother's argument to the contrary is not compelling.

In the present case, the juvenile court initially removed the children from mother's custody on September 19, 2019. This "original" removal fixed the 18-month period to expire on March 19, 2021, and the 24-month period to expire on September 19, 2021. (§ 361.5, subds. (a)(3)(A), (a)(4)(A).) Once a child is initially removed from their parent's custody, a deadline is set, and it is not reset if the parent regains custody at some point during the time period. To construe section 361.5's language as requiring the court

to reset the 18-month deadline simply because a parent succeeded in temporarily regaining physical custody " ' "would scuttle the purpose of the statute merely to preserve its form." ' " (See *N.M.*, *supra*, 108 Cal.App.4th at p. 854, citing *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1459.)

The reasoning employed by the juvenile court and suggested by mother ignores additional language in section 361.5, which clearly states the outer time limit is not tolled for the time a child is in the parent's physical custody. "Physical custody of the child by the parents or guardians during the applicable time under subparagraph (A), (B), or (C) of paragraph (1) shall not serve to interrupt the running of the period." (§ 361.5, subd. (a)(3)(B).) This language clearly limits the section's mandate for services beginning at the point in time that the court initially orders a child removed from parental custody pursuant to section 361.5, and it expressly excludes tolling of the period in the event a parent regains custody during the 18-month period. (See also *In re Michael S.*, *supra*, 188 Cal.App.3d at p. 1459.) The statutory deadlines were not written to function as stopwatches to be paused and restarted. Rather, the outer limit is fixed by section 361.5 upon the children's initial removal, and a date is set to expire in 18 months regardless of a custodial parent's subsequent retention of custody at disposition.

Adopting the interpretation proposed by mother would reward parents who either request or acquiesce to numerous continuances that result in excessive delays in completing the disposition hearing. (See *Tonya M.*, *supra*, 42 Cal.4th at p. 847 [rejecting interpretation suggested by parent because it "would only create incentives for a parent to interpose delay" in holding review hearings].) Resetting the 18-month time limit in situations where a parent regains custody after receiving nine months of predispositional services while their children are in foster care runs contrary to the purposes of the statutory scheme. It would only incentivize parents to delay the proceedings while undergoing a quasi-reunification period before the disposition hearing can even be completed.

Here, the juvenile court determined that mother had not exceeded the 18- or 24-month time limit for reunification services in reliance on the case of *T.W.*, *supra*, 214 Cal.App.4th at p. 1154. On appeal, mother also relies on the case of *A.C.*, *supra*, 169 Cal.App.4th at page 636 to support her argument that the 18-month time period did not begin until the children were removed from mother's custody pursuant to the section 387 petition. However, *T.W. and A.C.* are both distinguishable from our present circumstances. In both cases, the children were removed from one parent, placed with the other, and then removed from that parent and either placed with the original parent (*T.W.*) or placed directly into out of home custody (*A.C.*). The issue in each case was when the timeline for reunification services began considering the children's initial placement at the disposition hearing pursuant to section 361.2.

In *A.C.*, the appellate court affirmed the juvenile court's ruling, finding that "the time limits for services set forth in section 361.5 do not apply if dependents are not removed from the custody of both parents at the dispositional hearing." (*A.C.*, *supra*, 169 Cal.App.4th at p. 649.) The court explained that the "section 361.5, subdivision (a) 'clock' does not start to run against such parents unless and until the children are removed from the physical custody of the parent(s) and the court determines whether the parent(s) (are) entitled to reunification services pursuant to the lengthy analysis set forth in section 361.5." (*Id*. at p. 650, fn. omitted.)

The case of *T.W.* involved a minor's challenge to a juvenile court's order to provide the mother six more months of reunification services. (*T.W.*, *supra*, 214 Cal.App.4th at p. 1165.) The minor argued the mother had already received 31 months of services, exceeding the limit under section 361.5, subdivision (a). (*T.W.*, at p. 1164.) The Court of Appeal in *T.W.* discussed the interaction between sections 361.2 and 361.5, which were enacted as parts of a single legislative scheme and agreed with the appellate court in *A.C.* (*T.W.*, at p. 1165; see also *In re Erika W.* (1994) 28 Cal.App.4th 470, 475.)

After reviewing the differences between section 361.2 and 361.5, the court reasoned, "[a] comparison of sections 361.5 and 361.2 suggests there are two separate statutory tracks for services: one when a child is placed with a noncustodial parent (§ 361.2), and another when a child is placed with someone other than a parent (§ 361.5)." (*T.W.*, *supra*, 214 Cal.App.4th at p. 1167.) According to the Court of Appeal, the section 361.5 time period was not implicated while father had custody of the minor, and the section 361.5 time period was not triggered until the minor was removed from both parents' custody. (*T.W.*, at pp. 1167, 1169.) The court-ordered services the parents had previously received under section 361.2 did not preclude them from receiving services under section 361.5. (*T.W.*, at p. 1169.)

In the present case, the children were not removed from one parent and placed with another pursuant to section 361.2. Instead, they were initially removed from mother and placed into the temporary custody of the department from September 2019 to June 2020. At the disposition hearing mother regained custody of the children until their subsequent removal in January 2021. Thus, the 18-month time period began to run as of their initial removal in September 2019. Mother's citation to language from the *T.W.*, *supra*, 214 Cal.App.4th 1154 decision suggesting the section 361.5 time period begins to run from disposition was dicta, as it was not necessary to the resolution of that case.

Furthermore, as we have already discussed, the California Supreme Court has clarified that reunification services are limited by the 18-month time period, which is calculated from " 'the date the child was originally taken from the physical custody of his or her parent ….' " (See *In re Zacharia D.*, *supra*, 6 Cal.4th at p. 446.) Reunification services under section 361.2 are discretionary and not expressly time-limited because the minor remains in the custody of a parent and the goal of placing a child in parental custody has been met. (*In re Erika W.*, *supra*, 28 Cal.App.4th at p. 478.)

The final case relied upon by mother is *In re Joel T.* (1999) 70 Cal.App.4th 263 (*Joel T.*), which held that the juvenile court had improperly denied reunification services to a parent who only received family maintenance services. In that case, the minors were

24.

initially detained in October 1996 due to allegations that the appellant allowed a perpetrator of sexual abuse into the family's home. (*Id.* at p. 265.) However, the juvenile court authorized a trial placement of the minors with the appellant pending the jurisdiction hearing. (*Ibid.*)

At the combined jurisdiction and disposition hearing in January 1997, the juvenile court found that return of the minors to the appellant's custody would be detrimental, committed the minors to the custody of the department, and allowed the minors to remain in the custody of the appellant "on a trial basis." (*Joel T.*, *supra*, 70 Cal.App.4th at pp. 265–266.) The appellant was ordered to participate in a "reunification" plan, and her trial placement was continued with further services at the six-month review hearing. (*Ibid.*) In February 1998, the juvenile court removed the minors from the appellant's custody pursuant to a supplemental petition after she allowed the perpetrator back into her home on more than one occasion. (*Ibid.*) The juvenile court denied the appellant's request for reunification services at the April 1998 dispositional hearing on the supplemental petition because the department already provided her with 18 months of services. (*Id*. at pp. 266–267.)

In reversing the juvenile court's orders, the court found the minors' trial placement with the appellant was the "functional equivalent of an in-home dependency in which the court orders the parents to participate in child welfare services," which was disapproved of in *In re Damonte A.* (1997) 57 Cal.App.4th 894. (*Joel T.*, *supra*, 70 Cal.App.4th at p. 267.) The court then reasoned that, "the court ordered the minors removed from parental custody and denied reunification services solely because [the] appellant had received court-ordered services for the 18 months following the minors' original detention. However, [the] appellant had not received time-limited services prior to the minors' second detention on the supplemental petition as they were in her custody subject to the supervision of the juvenile court. Consequently, the court could not rely on the statutory limitations for services provided to parents whose children have been removed in denying services to [the] appellant." (*Id*. at p. 268.)

The court concluded by explaining, "[W]hen the juvenile court removes a minor from parental custody for the first time, section 361.5, subdivision (a), requires the court to order reunification services except in the circumstances specified in subdivision (b) of that section. (Cf. *Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159, 165–167 ….)" (*Joel T.*, *supra*, 70 Cal.App.4th at p. 267.) The procedures employed by the juvenile court to deny the appellant reunification services in *Joel T.* stand in stark contrast to the present case. The minors were returned to appellant's custody at the outset of the dependency proceedings through the use of a "nonstatutory procedure" that has been consistently disapproved. (See *Savannah B. v. Superior Ct.* (2000) 81 Cal.App.4th 158, 162.) Thus, they were not removed from appellant's custody such that the 18-month statutory limitation was applicable where the juvenile court allowed the minors to be placed in appellant's custody pending the jurisdiction hearing. (See *N.M.*, *supra*, 108 Cal.App.4th at p. 854 ["a detention pending a jurisdictional hearing should be considered an original removal from custody for purposes of section 361.5, subdivision (a)"].)

Here, the children continued to be removed from their mother's custody for a total of eight months once the disposition hearing was finally completed. The predispositional services provided to mother during this period cannot be compared to the exclusive provision of in-home services in *Joel T.* because the children were not residing with mother during that eight-month period. Furthermore, mother received a combination of predispositional services, family maintenance services, and family reunification services for a total of 26 months of court-ordered services. The children's initial and continued removal during the provision of mother's predispositional services was sufficient to trigger the 18-month statutory limit on court-ordered services. (See *N.M.*, *supra*, 108 Cal.App.4th at pp. 855, 857–858 [juvenile court abused its discretion by ordering additional services after parent already received almost 20 months of family maintenance and family reunification services].)

26.

We will continue to follow the rule that this court set forth in *Carolyn R. v. Superior Court, supra*, 41 Cal.App.4th 159. In that case, the children were detained from the mother in San Bernardino County and the mother received eight months of reunification services. In November 1994, the mother moved to Kern County and the juvenile court in that county returned the children to her based on her having made progress in the court-ordered plan. The children remained in the mother's custody until July 1995, when the Kern County Department of Human Services filed a section 387 petition to remove the children from her home. By that time, the mother had received eight months of reunification services and 10 months of family maintenance services. (*Carolyn R. v. Superior Court*, at p. 162.)

This court rejected the mother's argument that she was entitled to 12 additional months of reunification services starting from the date the section 387 petition was filed. "At issue when a parent has received child welfare services, in the form of both reunification and family maintenance services, is whether those services were reasonably designed to assist the parent in overcoming the problems which led to the court's intervention; the label given to the services is not dispositive. The goal of both reunification and maintenance services is to address the circumstances which required agency and court intervention into a family's life.… [¶] When a juvenile court sustains a supplemental petition pursuant to section 387, the case does not return to ' "square one" ' with regard to reunification efforts." (*Carolyn R. v. Superior Court, supra*, 41 Cal.App.4th at p. 166, fn. omitted.)

Although the *Carolyn R.* decision did not address the exact issue presented here, its reasoning is still applicable. Mother had been receiving court-ordered services for 20 months at the time of the disposition hearing on the first section 387 petition on May 10, 2021. At the time of the disposition hearing on the second section 387 petition on November 15, 2021, mother had received almost 26 months of court-ordered services comprised of approximately nine months of predispositional services, seven months of family maintenance services, and 10 months of reunification services. The services

27.

provided throughout the proceedings were nearly identical and involved substance abuse treatment, random drug testing, parenting classes, and mental health treatment. Excluding the entire 20 months that elapsed since the children's initial removal solely because mother briefly regained custody at the disposition hearing would be in clear violation of the express terms of section 361.5, subdivision (a)(3)(B).

This approach is also supported by the case of *N.M.*, *supra*, 108 Cal.App.4th at page 845 where similar facts were present. In *N.M.*, the juvenile court ordered the parents' 18-month-old child detained due to the parents' drug abuse in January 2001. (*Id.* at p. 848.) At the jurisdiction hearing, the court took jurisdiction over the child and ordered the child placed with mother under a plan of family maintenance. (*Ibid.*) The father was granted reunification services and visitation. (*Ibid.*) The court subsequently granted a section 388 petition to allow the father to move back in with the mother, and it restored the father's custody under a family maintenance plan. (*Id.* at p. 849.)

Due to the parents' relapse, the department removed the child pursuant to a section 387 petition in February 2002. (*N.M.*, *supra*, 108 Cal.App.4th at p. 849.) The juvenile court sustained the section 387 petition, removed the child from the parents, and granted the parents reunification services. (*Id.* at p. 850.) At the review hearing, the court concluded the family maintenance services provided to the mother would not be considered when calculating the amount of reunification services provided to the father. (*Id.* at p. 851.) As a result, the juvenile court concluded reunification services should continue to both parents. (*Ibid.*) The child appealed the juvenile court's order continuing the parents' reunification services, and the Court of Appeal reversed. The Court of Appeal reasoned that, "[m]other's 18-month period commenced at the time of the original detention and not later when she lost custody on the section 387 petition." (*Id.* at p. 855.)

In reaching its decision, the Court of Appeal explained: "The 18-month limitation set forth in section 361.5, subdivision (a) applies to all 'court-ordered services.' [Citation.] Nothing in the statute suggests the limitation period should be calculated

separately for maintenance and reunification services.… [¶] The fact a parent had custody during part of the total period does not stop the limitation period in section 361.5 from continuing to run. Section 361.5 states: 'Physical custody of the child by the parents or guardians during the applicable time period … shall not serve to interrupt the running of the period.' [Citation.] 'To construe the section's language as requiring the court to start services anew simply because a parent succeeded in temporarily regaining physical custody "would scuttle the purpose of the statute merely to preserve its form." ' " (*N.M.*, *supra*, 108 Cal.App.4th at pp. 853–854.)

"Indeed, if it were otherwise, a parent whose child was initially detained but who regained custody at the jurisdiction hearing could receive up to 12 months of family maintenance services [citation], lose custody again on a section 387 petition, and then receive up to 18 additional months of reunification services under section 361.5, subdivision (a) by arguing that the 'original' removal did not occur until the loss of custody pursuant to the section 387 petition. The resulting total hiatus of 30 months manifestly would not advance the legislative purpose of minimizing delay in dependency proceedings. 'While [22 months] may not seem a long period of time to an adult, it can be a lifetime to a young child.' " (*N.M.*, *supra*, 108 Cal.App.4th at p. 855.)

" 'When a juvenile court sustains a supplemental petition pursuant to section 387, the case does not return to " 'square one' " with regard to reunification efforts. [Citations.] Instead, the question becomes whether reunification efforts should resume. The answer is yes if: the parent has received less than 12 months of child welfare services (§§ 361.5, subd. (a), 366.21, subd. (e)); the parent did not receive reasonable child welfare services (§§ 366.21, subd. (g)(1), 366.22, subd. (a)); or the case has passed the 12-month mark but there is a substantial probability the child will be returned within 18 months of the date the child was originally removed from the parent's physical custody (§ 366.21, subd. (g)(1)).' " (*N.M.*, *supra*, 108 Cal.App.4th at p. 853.)

This same rationale is applicable to the present case. We acknowledge that the applicable version of section 361.5, subdivision (a) relied upon in *N.M.* differs from the

amended version applicable in the instant case. The 2021 version of section 361.5 limits subdivision (a)(1)(A) to reunification services, as opposed to encompassing child welfare services in general, and clarifies the term, "foster care," as defined in section 361.49. These amendments to section 361.5, subdivision (a), however, do not change the underlying rationale expressed in *N.M.* that a period of family maintenance services after a child's initial removal does not alter the statutory time limit for services pursuant to section 361.5, subdivision (a).

To conclude that the Legislature authorized reunification services to be ordered such that the children would potentially be in an out of home placement after more than 40 months have elapsed since their initial removal on January 27, 2021, is simply not reasonable. (See, e.g., *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 [court should avoid construction of statute that will produce " 'mischief or absurdity' "]; *Flannery v. Prentice* (2001) 26 Cal.4th 572, 578 ["We avoid any construction that would produce absurd consequences"].)

In sum, we believe the juvenile court erred in failing to consider the entire time period since the children's initial removal when it calculated the 18-month statutory limit on reunification services. By the time the juvenile court ordered mother's reunification services to continue in November 2021, mother had received approximately 26 months of services, which was well over the 18-month limit. "While [26 months] may not seem a long period of time to an adult, it can be a lifetime to a young child." (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 310.) As our Supreme Court has noted, " '[c]hildhood does not wait for the parent to become adequate.' " (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1016.)

Therefore, the matter is remanded for the juvenile court to vacate the order continuing mother's family reunification services from the November 15, 2021, hearing. However, we acknowledge this may have no practical effect given mother was being provided family maintenance services and the children were returned to her custody on August 18, 2022. As discussed previously, we render our decision despite these

30.

subsequent events to address this important issue of statutory interpretation. (*In re D.P.*, *supra*, 14 Cal.5th at p. 273.)

## DISPOSITION

The juvenile court's order continuing mother's reunification services on November 15, 2021, is reversed. The matter is remanded to the juvenile court with directions to vacate its order continuing mother's family reunification services. In all other respects the juvenile court's orders made at the November 15, 2021 section 387 disposition and family reunification review hearing are affirmed.

POOCHIGIAN, Acting P. J.

WE CONCUR:


PEÑA, J.


DE SANTOS, J.

31.